UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Criminal Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 06-43 (RMU) |
| ) | |
| MELVIN GEORGE_____ ) | |
| _____ ) | |

**DEFENDANT MELVIN GEROGE'S OPPOSITION TO
GOVERNMENT'S MOTION TO COMPEL PRODUCTION OF
DNA AND HAIR SAMPLES**

Melvin George, by his attorney, hereby submits this opposition to the government's request for the court to issue an Order requiring Mr. George to produce DNA and hair samples.

## BACKGROUND

Melvin George is charged in a one Count indictment with the offense of Bank Robbery, in violation of 18 U.S.C. § 2113(a). With respect to this charge, the government alleges that on December 8, 2005 a Citibank branch located at 1749 ½ Columbia Road, N.W., Washington, D.C. was robbed. The black and white surveillance videotape shows that the purported bank robber was wearing some sort of cap on his or her head. The government contends that, on December 27, 2005, Melvin George's sister provided the police with a "kufi that she said the defendant had in his possession on the date of the robbery." Government's Motion at 1. The government opines that the cap which was worn by the purported bank robber on December 8, 2005 was the same "kufi" cap which was turned over by Mr. George's sister. The government claims that "at least one strand of hair was entangled" in the kufi which was turned over to police and the government wants to conduct "DNA and/or hair fiber comparison to see whether [the strand of hair and any other similar evidence] can be linked to the defendant." Government's Motion at 1. Therefore, the government

1

is seeking an Order from this Court to collect DNA and hair samples from Mr. George.

## ARGUMENT

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." Since the compulsory seizure of evidence from a person's body constitutes a search for Fourth Amendment purposes,[1] the government's request that Mr. George be required to produce DNA and hair samples implicates his search and seizure rights under the Fourth Amendment.

In Schmerber, a case upon which the government relies in its motion, the Supreme Court held that the state's action in extracting a blood sample from a suspected drunk driver did not violate that suspect's Fourth Amendment rights. In Schmerber, however, the court did not hold that extraction of a blood sample is permissible in every case. Rather, the Court found that a defendant can be required to submit such a sample if it is justified under the circumstances of the particular case and performed in an appropriate manner. Schmerber at 768. Further, the Court found that, in order for such a search to be justified, there must be "a clear indication that in fact such evidence will be found" and that a "mere chance that desired evidence might be obtained" was insufficient. Id. at 769-770. Only after utilizing this standard, the Schmerber court noted that the particular facts in that case demonstrated the required relevance and likelihood that the blood test for alcohol would be successful. Id. at 770. The Court cautioned, however, that it "reach[ed] this judgment only on the facts of the present record." Id.. The Court emphasized the limitations of its holding when stating "[t]hat we today hold that the Constitution does not forbid . . . minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusion, or intrusions under other conditions." Id. at 772.

---

[1]See Schmerber v. California, 384 U.S. 757, 765 (1966).

Since <u>Schmerber</u>, the Supreme Court has refused to extend the limitations of its decision. In <u>Winton v. Rudolph</u>, 470 U.S. 753 (1985), for example, the Court held that ordering a surgical intrusion to recover a bullet was unreasonable under the Fourth Amendment where there was no compelling need to recover the bullet in light of other available evidence. In <u>Winton</u>, the victim of an armed robbery fired a gun at the suspect during the incident. When a suspect was arrested, the State sought to retrieve a bullet that was lodged in his shoulder in order to make a bullet comparison. The Court found that there was no "compelling need" for the evidence in light of the fact that the State had other additional evidence, including an eye-witness identification. <u>Winton</u> at 765.

In the instant case, the government has not established that it is appropriate for them to collect the requested samples from Mr. George under the circumstances of this case. Significantly, the government has not satisfactorily shown that there is any connection between the "kufi" provided by Mr. George's sister and the cap which was worn by the suspected robber on the day of the robbery. The government has not provided any details explaining how the cap worn by the alleged robber is similar in appearance to the "kufi" turned over by Mr. George's sister. Further, the government has not shown how evidence of Mr. George's hair in the "kufi" which was produced by Mr. George's sister on December 27, 2005 ties Mr. George to a bank robbery which allegedly took place on December 8, 2005. Certainly, evidence which links Mr. George's known hair with hair samples actually recovered from the crime scene is evidence which can tie Mr. George to the bank robbery. But, as we have in this case, evidence which simply links Mr. George's known hair with hair in a kufi which Mr. George's sister claims was recovered from a residence at which Mr. George was recently residing does not tie Mr. George to any bank robbery which allegedly took place on

December 8, 2005. For these reasons, the instant case is unlike the situation which was presented in Schmerber.

Additionally, the government has not demonstrated a "compelling need" for the evidence it seeks. At trial, the government is already planning to admit a videotape which shows the face of the purported bank robber and the government already has a statement from Mr. George's sister where she states that the "kufi" and various other items were recovered from her home amongst Mr. George's personal belongings. With such evidence, there is no compelling need for the government to collect DNA and hair samples from Mr. George in an attempt to show a link between Mr. George and the "kufi" which Mr. George's sister turned over to the police.

Based on the current record, when balancing the government's interests with Mr. George's Fourth Amendment right to be free from unreasonable searches and seizures, the government's request that Mr. George be required to produce DNA and hair samples must be denied.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Tony W. Miles
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500