## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. : 06-43(RMU)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **MELVIN GEORGE,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

## JOINT PRETRIAL STATEMENT

### July 18, 2006

**Frederick Yette, AUSA**
**Reagan Taylor, AUSA**
**555 4th Street, NW**
**Washington, DC 20530**
**Frederick.Yette@usdoj.gov**
**202-353-1666**

**Tony Miles, Esq.**
**Federal Public Defender Service**
**625 Indiana Avenue, NW**
**Suite 550**
**Washington, DC 20004**
**202-208-7500**

## JOINT STATEMENT OF THE CASE

The government alleges that on December 8, 2005, a Citibank branch, located at 1749 ½ Columbia Road, N.W., Washington, D.C., was robbed.  The government contends that the person who robbed the bank was able to successfully flee from the bank with $2,095.00.  The government is now accusing Melvin George of having committed the December 8 bank robbery.

## PROPOSED VOIR DIRE QUESTIONS – PARTIES IN AGREEMENT

The parties agree to the following voir dire questions:

1.  Based on the Statement of Fact, does any member of the jury panel believe that he or she knows anything about this case?

2.  Is there anything about the nature of the charge of Bank Robbery that might affect your ability to render a fair and impartial verdict if you are chosen as a juror?

3.  [Introduction of the defendant]

4.  Mr. George is represented by Tony Miles.  The United States is represented by Assistant United States Attorneys Frederick Yette and Reagan Taylor.  Does any member of the panel know any of the parties or legal representatives of the parties in the case?

5.  During the presentation of evidence by the United States, you may hear testimony from or about the following persons: [List to be provided at trial].

6.  [Introduction of potential defense witnesses, if any.] It is acceptable for the defense not to call any witnesses and the defense has no obligation to call any witnesses.  However, if the defense chooses to call witnesses, you may hear testimony from or about the following persons. [List to be provided at trial].  Does any member of the panel know any of the prospective witnesses in the case?

7.  How many of you believe that because Mr. George was arrested and charged with a crime, he is probably guilty of something?

8.  Mr. George is presumed innocent of the charge against him, and has no obligation to call any witnesses.  How many of you will have difficulty being fair and impartial in deciding whether Mr. George is guilty or not guilty simply because he did not call any witnesses?

9.  Has any member of the jury panel, or any of your immediate family members or close

friends, studied law or had any legal training?

      a.      If the answer is yes, what was the nature of the studies or training?

      b.      Would this study or training affect your ability to follow the Court's

              instructions as to the law that should be applied in this case?

10.      Have any of you ever worked for either a Federal or local court system in any capacity?

11.  Have you or any of your relatives or any close friends ever worked, in any capacity, with or for a defense attorney or an investigator working for a defense attorney?

      a.      If the answer if yes, what was the nature of the employment?

      b.      Would this employment affect your ability to be fair and impartial juror in this case?

12.  Have you (or your close friends or relatives) ever worked for, or even sought employment with, a law enforcement agency. This includes, but is not limited to, the Metropolitan Police Department (MPD), the Federal Bureau of Investigations (FBI), the Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco and Firearms (BATF), United States Park Police, Military police, the Secret Service and the United States Marshal Service.

13.      Have you (or your close friends or relatives) ever worked for, or even sought employment with, a prosecutor's office. This includes, but is not limited to, a state District Attorney's Office, the United States Attorney's Office, Department of Justice and Office of Corporation Counsel.

14.  Has any member of the jury panel ever served as a juror in the trial of a criminal case? Is there anything about your prior experience as a juror which would affect your ability to be a fair and impartial juror in this case?

15.  Has any member of the jury panel ever served as a grand juror?  Is there anything about your prior experience as a grand juror which would affect your ability to be a fair and impartial juror in this case?

16.    Do any of you feel that it would be difficult to stick with your position because you were in the minority or the only juror with such a position?

17.  Have any of you (or your close friends or relatives) ever been a witness to, victim of, arrested for, charged with, or accused of, any crime?

18.    Have any of you ever belonged to, or participated in, a crime prevention group. Examples of such groups are Neighborhood Watch and the Orange Hats.

19.  Are there any among you who has a hearing problem such that it would make it difficult for you to hear tape recordings, or an eyesight problem which would make it difficult to view projections of photographs, all of which may be presented as part of the evidence in this case?

20.  Do any of you have an illness, or other medical condition which would make it difficult for you to sit as a juror?  (Answers to be taken at the bench).

21.  The trial may last one week or longer.  Is there any member of the jury panel who has an urgent or extremely important matter to attend to such that he or she would be faced with a hardship if selected for the jury in this case?  (Answers to be taken at the bench).

22.  Do any of you know of any reason whatsoever, even if not covered by the Court's questions, why you could not or should not sit as a juror in this case or why you could not render a fair and impartial verdict based upon the evidence and the law as you shall hear it?  (Answers to be taken at the bench).

23.    Do you have any questions?

## VOIR DIRE QUESTIONS THAT ARE IN DISPUTE

1.  Defense:    How many of you now have any opinion regarding Mr. George's guilt or innocence?

[The government objects because this question is redundant with Question 7 above, a defense question the government did not oppose.  The question is also unnecessary because the Court will instruct the jurors that they should not form opinions about the defendant's guilt or innocence until they are instructed to deliberate.]

2.  Defense:    How many of you feel that you might have some difficulty presuming that Mr. George is innocent of the charge against him in this case?

[The government objects to this form of the question, but offers this revision:  How many of you feel that you might have difficulty presuming that Mr. George is innocent of the charge against him throughout the trial, unless and until he is proven guilty beyond a reasonable doubt?]

3.  Defense:    This case involves allegations of bank robbery.  How many of you feel that, because of the nature of the charge in this case, it might be difficult for you to sit as a juror?

[The government objects because this question is covered by Question 2 above, which both parties accepted:        "2.  Is there anything about the nature of the charge of Bank Robbery that might affect your ability to render a fair and impartial verdict if you are chosen as a juror?"]

4.  Defense:    You will be asked to set aside your concerns and attitudes about crime and violence in deciding this case.  You will be asked to decide this case independently and solely on the evidence and the instructions as the Court gives them to you.  How many of you feel that you might find that difficult?

[The government objects to the first sentence of this question because it is not a true

statement; jurors do not have to put aside their concerns and attitudes about crime and violence,

they simply have to be fair and impartial.  The rest is of the question is acceptable.]

5.  Defense:    Have you or anyone close to you had an unpleasant experience with a

crime of violence or intimidation?

[The government opposes this question because it is covered by Question 17 above.  If a

juror has had such an experience, follow up questions at the bench would be necessary.]

6.  Defense:  Have any of you formed any opinions about defense attorneys?

[The government objects to this question as too vague, but offers this revision: Have any

of you formed any positive or negative opinions about defense attorneys that would make it

difficult for you to render a fair and impartial verdict in this case:]

7.  Defense:    Have any of you formed any opinions about prosecutors?

[The government objects to this question as too vague, but offers this revision: Have any

of you formed any positive or negative opinions about prosecutors that would make it difficult

for you to render a fair and impartial verdict in this case:]

8.  Defense:    How many of you feel that police testimony is more likely to be believable

or reliable than testimony by another witness?

[The government objects to this question, and to questions 9 and 10 below, but offers the

following revision to all three these questions:  Does anyone believe, or has anyone had an

experience that may cause you to believe that law enforcement officers are untrustworthy, or less

believable, or more prone to make mistakes when compared with other individuals?  Does

anyone believe, or has anyone had an experience that may cause you to believe that law

enforcement officers are more trustworthy, or more believable, or less likely to make mistakes

when compared with other individuals?

9.  Defense:    If you had to choose who to believe, a police officer or a witness called by a defendant, how many of you would be more likely to believe the police officer because he is a police officer?

[See the response to Question 8.]

10.  Defense:   How many of you agree that in general police don't make mistakes? \

[See the response to Question 8.]

11.  Government:  Some of the government witnesses are law enforcement officers.  Have any of you, any members of your family, or any close friends, had an experience with any law enforcement, or police officer, or with any person associated with or employed by the United States Attorney's Office or the Court, which would make it difficult for you to be a fair or impartial juror in this case?  (Answers to be taken at the bench).

[The defense objects because this question does not address any potential bias jurors may have in favor of law enforcement or the government.]

12.  Government:  Is there any member of the jury panel who has any moral, religious or philosophical convictions which would make it difficult for you to pass judgment on another person or to render a judgment in this case based solely upon the evidence presented during the trial?  (Answers to be taken at the bench)

[The defense objects because this question is better addressed by Question 22, which has been agreed to by both parties.]

13.  Government:  Do any of you need to take any medication which might cause drowsiness or otherwise make it difficult for you to remain alert and attentive during these proceedings? (Answers to be taken at the bench).

[The defense objects on grounds that this question is covered by Question 20, which has

been agreed to by both parties.  The government believes this question address a specific issue –

medication – which a potential juror may not consider when responding to Question 20.]

# JURY INSTRUCTIONS[1]

The parties jointly request the following instructions.

## I.    GENERAL INSTRUCTIONS.

1.03    Preliminary Instruction Before Trial

1.07    Question Not Evidence

1.22    A Juror's Recognition of a Witness or Other Party Connected to the Case

2.01    Function of the Court

2.02    Function of the Jury

2.03    Jury's Recollection Controls

2.04    Evidence in the Case

2.05    Statements of Counsel

2.06    Indictment Not Evidence

2.07    Inadmissible and Stricken Evidence

2.08    Burden of Proof - Presumption of Innocence

2.09    Reasonable Doubt

2.10    Direct and Circumstantial Evidence

2.11    Credibility of Witnesses

2.13    Number of Witnesses

2.14    Nature of Charges Not to Be Considered

2.26    Police Officer's Testimony

2.27    Right of Defendant not to Testify (if applicable and if desired by Mr. George)

---

[1]The numbered instructions listed below are taken from the "Redbook" instructions printed in Criminal Jury Instructions for the District of Columbia (4th ed. 1993).

**II.      <u>CLOSING INSTRUCTIONS</u>.**

2.71    Selection of Foreperson

2.72    Unanimity

2.73    Exhibits During Deliberations
        (depending upon Court's practice)

2.75    Communications Between Court and Jury During Jury's Deliberations


Note:   The parties reserve their right to propose additional instructions based upon the evidence
        at trial and to revise these instructions if necessary.  Additionally, Mr. George reserves his
        right to submit a theory-of-defense instruction (see Redbook instruction No. 5.01)

## Form Instruction 1.07
### QUESTION NOT EVIDENCE

Sometimes a lawyer's question suggests that something is a fact. Whether or not something is a fact depends on the witness' answer -- not the lawyer's question. A lawyer's question is not evidence.

## Form Instruction 1.22

### A JUROR'S RECOGNITION OF A WITNESS OR OTHER PARTY CONNECTED TO THE CASE

At the beginning of the jury selection process, you were introduced to some witnesses in person. Others were identified to you only by name. If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in the testimony or evidence, or anyone else connected with this case in any way, you should tell the court immediately. You should not tell any other member of the jury about your discovery. If you realize you are acquainted with someone connected with this case while a witness is testifying, you should raise your hand immediately and ask to speak privately to the marshal or with me at the bench.

**Form Instruction 2.01**
**FUNCTION OF THE COURT**

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law which applies in this case.

It is your duty to accept the law as I state it to you. You should consider all the instructions as a whole. You may not ignore any instruction, or question the wisdom of any rule of law.

**Form Instruction 2.02**
**FUNCTION OF THE JURY**

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. You alone decide what weight to give to the evidence presented during the trial. You decide the value of the evidence and the believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any opinion as to the facts, you should ignore it. It is your sole and exclusive duty to decide the verdict in this case.

**Form Instruction 2.03**

**JURY'S RECOLLECTION CONTROLS**

If any reference by the court or the attorneys to evidence does not coincide with your own recollection of the evidence, it is your recollection which should control during your deliberations.

## Form Instruction 2.04

### EVIDENCE IN THE CASE -- JUDICIAL NOTICE, STIPULATIONS, DEPOSITIONS

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case was the sworn testimony of the witnesses, [the exhibits which were admitted into evidence], [the facts of which I took judicial notice], [the facts and testimony stipulated to by the parties], and [depositions].

[The court may take judicial notice of public acts, places, facts and events which the court regards as matters of common knowledge. In this case, I took judicial notice of [ ^ ] . [You may, if you choose to do so, regard that fact as proven evidence, but you are not required to do so because you are the sole judges of the facts.]]

[During the trial, you were told that the parties had stipulated -- that is, agreed to -- certain facts. Any stipulation of fact is undisputed evidence, and you may consider it undisputed evidence.]

[During the trial, you were told that the parties had stipulated -- that is, agreed to -- what testimony a particular witness would have given if s/he had testified in this case. You may consider this stipulated testimony as exactly what this witness would have said had s/he testified.]

[A deposition is testimony given by a witness before trial. The witness is placed under oath to tell the truth, and lawyers for each party may ask questions. The questions and answers are recorded by a court reporter. You may consider deposition testimony in the same way you would consider testimony actually given in court.]

When you consider the evidence, you are permitted to draw, from the facts which you find

have been proven, such reasonable inferences as you feel are justified in the light of your experience.

# Form Instruction 2.05
## STATEMENTS OF COUNSEL

The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence.

**Form Instruction 2.06**

**INDICTMENT NOT EVIDENCE**

The indictment is merely the formal way of accusing a person of a crime to bring him/her to trial. You must not consider the indictment as evidence of any kind -- you may not consider it as any evidence of the defendant's guilt or draw any inference of guilt from it.

**Form Instruction 2.07**
**INADMISSIBLE AND STRICKEN EVIDENCE**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence which the objecting lawyer believed was not proper. You must not be prejudiced against the lawyer who made the objections. It is the lawyers' responsibility to object to evidence which they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should disregard the question and you must not speculate as to what the answer would have been.

If, after a witness answered a lawyer's question, I ruled that the answer should be stricken, you should disregard both the question and the answer in your deliberations.

Likewise, exhibits, as to which I have sustained an objection, or which I ordered stricken, are not evidence and you must not consider them in your deliberations.

## Form Instruction 2.08
### BURDEN OF PROOF -- PRESUMPTION OF INNOCENCE

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until s/he is proven guilty beyond a reasonable doubt.

The burden is on the government to prove the defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his/her innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him/her guilty. On the other hand, if you find the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty.

## Form Instruction 2.09
### REASONABLE DOUBT

The government has the burden of proving the defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason -- a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

# Form Instruction 2.10
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which you may find the facts of a case -- direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness' testimony is direct evidence. A chain of facts and circumstances indicating the guilt or innocence of a defendant is circumstantial evidence

The law makes no distinction between the weight you should give to either kind of evidence, nor does circumstantial evidence require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should weigh all of the evidence presented, both direct and circumstantial.

# Form Instruction 2.11
## CREDIBILITY OF WITNESSES

In determining whether the government has established the charges against the defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have appeared before you.

You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider the demeanor and the behavior of the witness on the witness stand; the witness' manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

[Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent mis-recollection, like a failure of recollection, is not an uncommon experience. In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.]

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other credible evidence.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

**Form Instruction 2.13**
**NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe. You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side, or you may find to the contrary.

## Form Instruction 2.14
### NATURE OF CHARGES NOT TO BE CONSIDERED

[One of the questions you were asked when we were selecting this jury was whether the nature of the charge would affect your ability to render a fair and impartial verdict. There was a reason for that question.] You must not allow the nature of the charge itself to affect your verdict. You must consider only the evidence that has been presented in this case in rendering a fair and impartial verdict.

**Form Instruction 2.26**

**POLICE OFFICER'S TESTIMONY**

A police officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because s/he is a police officer.

## Form Instruction 2.27
### RIGHT OF DEFENDANT NOT TO TESTIFY

Every defendant in a criminal case has an absolute right not to testify. Mr. George has chosen to exercise his right to remain silent. You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision, and I, therefore, instruct you not to do so. Most importantly, you must not draw any inference of guilt from the defendant's decision not to testify.

# Form Instruction 2.71
## SELECTION OF FOREPERSON

When you return to the jury room, you should select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission -- to reach a fair and just verdict based on the evidence. Consider whether you wish to select a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

# Form Instruction 2.72
## UNANIMITY

The verdict must represent the considered judgment of each juror. In order to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

[Defendant has been charged with one count of [ ^ ] . There has been evidence of more than one act or incident upon which a conviction on this count may be based. [Describe the separate acts/incidents.] You may find the defendant guilty on this count if the government proves beyond a reasonable doubt that defendant committed either of these acts/incidents. However, in order to return a guilty verdict on this count, all jurors must unanimously agree as to at least one of these specific acts/incidents. In other words, you must all agree that defendant committed [describe first act/incident] or that defendant committed [describe second act/incident].]

**Form Instruction 2.73**
**EXHIBITS DURING DELIBERATIONS**

I am sending into the jury room with you the exhibits that have been received in evidence . You may examine any or all of them as you consider your verdict(s).]

[If you wish to [see] [hear] those portions of [describe tapes] which I have admitted into evidence, please notify the clerk by a written note and we will assemble in the courtroom with the appropriate equipment.]

[I am not sending the exhibits that have been received in evidence with you as you start your deliberations. However, you are entitled to see any or all of these exhibits as you deliberate. I suggest that you begin your deliberations and then, if it would be helpful to you, you may ask for any or all of the exhibits that have been received in evidence simply by sending me a note from your foreperson through one of the marshals.]

## Form Instruction 2.75

### COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S DELIBERATIONS

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me by any means other than a signed note and I will never communicate with any member of the jury on any matter touching the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person -- not the clerk, the marshal or me -- how jurors are voting until you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter. This means, for example, that you should never tell me that the jury is divided 6 to 6, for example, or 7 to 5, or 11 to 1, whether the vote is for conviction or acquittal or any other issue in the case.

### III.  **INSTRUCTIONS ON CHARGED BANK ROBBERY OFFENSE.**

The parties disagree about the language that should be used in the instruction regarding the bank robbery offense.

The defense proposes the following instruction[2]:

In order to prove the charge against Mr. George, the government must establish each of the following elements beyond a reasonable doubt:

First, that on December 8, 2006, the CitiBank branch located at 1749 ½ Columbia Road, N.W., Washington, D.C. was a federally insured bank;

Second, that Mr. George took money that belonged to or was in the care, custody, control, management or possession of the bank from the person or in the presence of another; and

Third, that Mr. George did so in an intimidating manner.

A "federally insured bank" means any bank with deposits insured by the Federal Deposit Insurance Corporation.

The government objects to the defense proposal because it does not contain an explanation of what it means to act in an "intimidating manner."

---

[2]See Instruction 53-2 from Sand, *et. al.* Modern Federal Jury Instructions (Criminal), Vol. 3 (2005).

The government proposes the following instruction:

### GOVERNMENT'S PROPOSED SUPPLEMENTAL INSTRUCTION
### BANK ROBBERY
### 18 U.S.C. § 2113(a)

18 U.S.C. Section 2113(a) makes it a crime for anyone to take from a person or from the presence of someone, by intimidation, any money in the possession of a federally insured bank. Mr. George is charged with robbing the Citibank, located at 1749-1/2 Columbia Road, NW, Washington, DC, on December 8, 2005.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the defendant intentionally took money from a Citibank employee, or from the presence of a Citibank employee;

Second: That the money belonged to or was in the care, custody, control, management or possession of a federally insured bank at the time of the taking;

Third: That the defendant took the money by means of intimidation.

A "federally insured bank" means any bank with deposits insured by the Federal Deposit Insurance Corporation.

To take "by means of intimidation" is to say or do something in such a way that a person of ordinary sensibilities would be fearful of bodily harm.  It is not necessary to prove that the alleged victim was actually frightened, and neither is it necessary to show that the behavior of the defendant was so violent that it was likely to cause terror, panic, or hysteria.  However, a taking would not be by "means of intimidation" if the fear, if any, resulted from the alleged victim's own timidity rather than some intimidating conduct on the part of the defendant.  The essence of the

offense is the taking of money or property accompanied by intentional, intimidating behavior on the part of the defendant.

Mr. George's objects to the government's proposed instruction because the instruction does not require the jurors to making a finding regarding which specific Citibank Mr. George allegedly robbed and because the government's proposed instruction was not taken from a legitimate legal source.

**<u>The defendant's prior convictions the government will use as impeachment</u>**:

Unlawful Entry, Case No. 2005 - CMD- 13610, (DC 2/27/06)

Interstate Transportation of Stolen Property, Case No. 04-61, (DC 12/6/04)

**Government's Expert Witnesses**

Karen Korsberg, FBI Trace Evidence Unit - The examiner determined that hair fibers obtained from a kufi the defendant allegedly wore during the Citibank robbery did not match the defendant's known hair samples. The examiner will testify regarding the analysis of hair and fiber samples and why known samples may not match samples obtained from government evidence

Michael Shay, FBI Forensic Examiner (fingerprints) - The examiner determined that latent fingerprints obtained from the Citibank did not match the defendant's known fingerprints. The examiner will testify regarding the analysis of known and latent fingerprints and why latent prints recovered from a crime scene may not match a suspect's known fingerprints

Christopher W. Iber, FBI Forensic Examiner - The examiner compared the defendant's eyeglasses and a kufi that was turned over to the police with eyeglasses and a kufi that are visible on the robber in the bank surveillance videotape.  The examiner will testify about the inconclusive results of his comparison of this physical evidence associated with the defendant and items visible in bank surveillance videotape.

**Defendant's List of Expert Witnesses**

The defense is unable at this time to identify which potential expert witnesses the defense will need because the government does not yet have the results concerning various tests and examinations which have been performed in connection with this case.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. : 06-43(RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **MELVIN GEORGE,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## <u>VERDICT FORM</u>

### <u>COUNT ONE</u>

On the charge of Bank Robbery, we the Jury find the defendant:


_____ Guilty          \_\_\_\_\_ Not Guilty



_____
Foreperson


Date: _____

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Criminal Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Number 06-043 (RMU) |
| | ) | |
| MELVIN ERIC GEORGE_____) | | |
| _____ | ) | |

**DEFENDANT MELVIN GEORGE'S MOTION <u>IN</u> <u>LIMINE</u>**

Melvin George, through counsel, respectfully submits the following motion <u>in</u> <u>limine</u> regarding his upcoming trial in this matter. Specifically, Mr. George, through counsel, moves the Court for an Order, <u>in</u> <u>limine</u>, prohibiting the government from introducing into evidence or making any reference to the following in the trial of this case: 1) Evidence concerning Mr. George's incarceration just prior to the alleged bank robbery at issue in this case and 2) evidence of any assaults Mr. George allegedly committed against his sister Janene George or against Janene George's daughter. Additionally, Mr. George seeks permission to introduce evidence regarding other bank robberies which were occurring around the time of the bank robbery at issue in this case and to introduce evidence concerning other suspects implicated in the robberies.

**A.    Background**

A one Count indictment was filed with the court in the instant case on February 16, 2006. The indictment charges Mr. George with committing the offense of Bank Robbery, in violation of 18 U.S.C. § 2113(a). Mr. George made his first appearance before the court on March 7, 2006. At that time, Mr. George was arraigned and he entered a plea of not guilty to the sole count in the indictment. The trial for this case has been scheduled for August 11, 2006.

B.    **Statement of Facts**

On December 6, 2006, Mr. George was released from incarceration at the Federal Transfer Center in Oklahoma City, Oklahoma.[3]  Based on documents the government has provided the defense, after his release, Mr. George was scheduled to depart Oklahoma City on December 6, 2006 by Greyhound bus.  According to Mr. George's alleged itinerary, he was scheduled to arrive at his place of future residence in Washington, D.C. on December 7, 2006.  On December 8, 2006, at about 12:58 p.m., the government alleges that a Citibank branch located at 1749 ½ Columbia Road, N.W., Washington, D.C. was robbed.  Based primarily on evidence from Mr. George's sister, Janene George, the government is now accusing Mr. George of having robbed this bank.

Between about September 29, 2005 and January 10, 2006, the government advises the defense that numerous banks were robbed in the vicinity of the 1749 ½ Columbia Road bank.  Based on information provided by the government, in addition to the Columbia Road Citibank, four banks were robbed in the area during this time period.  Due to fingerprint comparisons and other evidence, the government suspects an individual other than Mr. George to be responsible for these four bank robberies.

About two weeks after the Columbia Road Citibank incident, the government alleges that Mr. George assaulted Janene George and Ms. George's daughter.  During the alleged assault, the government claims that Janene George states that Mr. George accused her of being a "snitch."

On about December 30, 2005, Mr. George was arrested at a District of Columbia school in connection with an alleged unlawful entry offense.  After Mr. George's arrest for the school related offense, the police also held Mr. George in connection with an arrest warrant which was in place due

---

[3]Mr. George had served a nearly two year sentence after his conviction for an Interstate Transportation of Stolen Property offense.

to the Citibank bank robbery.

**C.    The Government Should be Precluded from Introducing Any Evidence Concerning Mr. George's Prior Incarceration and His Release from Prison.**

At trial, pursuant to Fed. R. Evid. 404(b), the government wishes to introduce evidence of Mr. George's incarceration just prior to the December 8, 2006 for the purpose of "establishing the defendant's opportunity and motive for committing the instant offense."[4]

The Federal Rules of Evidence unequivocally recognize that prior bad acts are impermissible if used to show action in conformity therewith.  Fed. R. Evid. 404(b).  For example, in United States v. Old Chief, the Supreme Court applied Fed. R. Evid. 404(b) to prior convictions and noted that although Fed. R. Evid. 404(b) contains numerous exceptions, the government continues to bear the burden of finding a permissible exception.  See United States v. Old Chief, 519 U.S. 172 (1997).

In the instant matter, the Government seeks to introduce the prior incarceration evidence in order to imply that Mr. George was facing financial hardship after a lengthy period of incarceration. If the court were to accept this reasoning, the prohibition against introduction of prior convictions would be effectively undermined whenever a financially insecure defendant was charged with a crime soon after a release.  According to the Government's reasoning, evidence of a defendant's prior incarceration is admissible whenever a defendant has been recently released from custody because any recently-released prisoner has a motive to commit a crime whereby he expects to receive something of value (e.g. money).  Surely, the Federal Rules of Evidence do not allow such a sweeping exception.  The Government's insistence that a two-year period of incarceration increases the incentive for robbery is likewise insufficient to circumvent the prohibition against character evidence to show conformity.  A prison sentence of two years tells the jury nothing about the dire

---

[4]See Government's Motion to Introduce Evidence Concerning Defendant's Release from Prison at 2.

financial straits of an ex-prisoner.  In fact, the only effect such evidence has is its highly prejudicial ability to inform the jury that the defendant has committed some kind of serious crime in the recent past.

The Government would rely on <u>United States v. Kimball</u>, 73 F. 3d 269 (10th Cir. 1995), for the proposition that evidence of recent release from prison alone provides the Government with permissible motive evidence in a case where the object of the offense was money.  However, a careful reading of <u>Kimball</u> makes clear that the case stands for no such proposition.  In <u>Kimball</u>, the government needed to present evidence of the defendant's incarceration for a variety of reasons which are not present in the instant case. For instance, as a critical part of the government's case, the government needed to be able to tie to the defendant to a particular coffee pot.  The only evidence the government had to tie the defendant to the pot was that the pot had his prisoner identification number inscribed on the pot.  Thus, in order to inform the jurors of how the pot was tied to the defendant, the jurors needed to know of the fact of the defendant's incarceration.  Another reason the government needed to discuss the fact of the defendant's prior record was because the government's case relied heavily on an identification which was made by defendant's probation officer.  The <u>Kimball</u> court admitted evidence regarding the defendant's incarceration because such testimony tied the defendant other pieces of evidence in the case.  In fact, the court made only a passing reference to the defendant's recent release as establishing motive, only after making clear that the evidence already had several very important legitimate uses.  <u>Kimball</u> at 271.

Unlike in <u>Kimball</u>, In the instant matter, there is no evidence from which the Government seeks to establish identity and opportunity.  In <u>Kimball</u>, the "cat was out of the bag" regarding the suspect's trail of evidence connecting his stay in prison with the robbery in question; consequently, the court did not need to squarely address the issue of revealing recent penal status solely to suggest

a financial motive.  Thus, the government has no authority to support its position that evidence of Mr. George's recent incarceration is admissible to show simply that he had a financial motive to commit the offense with which he is charged.

Even if the court finds that evidence concerning Mr. George's prior incarceration is admissible under Rule 404(b), such evidence should be excluded under Fed. R. Evid. 403.  Under Rule 403, relevant evidence may be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,  waste of time, or needless presentation of cumulative evidence."  Admission of evidence concerning Mr. George's recent incarceration is severely prejudicial.  The jury will undoubtedly be negatively influenced about Mr. George's character if it learns that Mr. George had recently been released from incarceration after having served two years in a federal prison.  The damage such evidence will cause is great and the jury will likely favor convicting Mr. George simply based on the information regarding his incarceration.  Considering that the probative value, if any, is very minimal, the court should exclude evidence concerning Mr. George's prior incarceration under Rule 403.

**D.   The Government Should be Precluded from Introducing Evidence Concerning any Assaults Mr. George Allegedly Committed Against Janene George or Against Janene George's Daughter.**

The government has indicated to Mr. George's counsel that it may seek to introduce evidence at trial concerning an assault Mr. George allegedly committed against his sister, Janene George, and another assault Mr. George allegedly committed against Janene George's daughter.  Mr. George submits that such evidence is not relevant to the instant matter and should be excluded under Fed. R. Evid. 401 and Fed. R. Evid. 402.  Unless the government can make a connection between the alleged assaults and the December 8 bank robbery, the evidence must be excluded under Rule 402.

If the government is able to show that evidence of the assaults is relevant, Mr. George moves pursuant to Fed. R. Evid. 403 for its exclusion. As with evidence concerning Mr. George's recent incarceration, admission of evidence concerning the alleged assaults is severely prejudicial. The jury will undoubtedly be negatively influenced about Mr. George's character if it learns of the assaults. The damage such evidence will cause is great and the jury will likely favor convicting Mr. George simply based on the information regarding the alleged assaultive conduct. Considering that the probative value, if any, is very minimal, the court should exclude evidence concerning the alleged assaults under Rule 403.

**E.    Mr. George is Allowed to Present Evidence Regarding Other Bank Robberies and Evidence Concerning Any Other Suspects in Connection with the Robberies.**

The Supreme Court has recognized that a criminal defendant enjoys the right to present a defense as part of the protections of the Sixth and Fourteenth Amendments. In Specht v. Patterson, 386 U.S. 605, 610 (1967), the Supreme Court recognized that Due Process protected the right to present a defense. Several years after Specht, the Court recognized that Due Process included the right to present exculpatory evidence as part of the defense. See Chambers v. Mississippi, 410 U.S. 284 (1973). The Sixth Amendment also provides protection for a defendant's right to present a full defense. See Washington v. Texas, 388 U.S. 14, 17-19 (1972). These rights have been recognized repeatedly by the Supreme Court over the years in instances where the government has sought to limit the ability to present a full defense. See e.g. Green v. Georgia, 442 U.S. 95, 96 (1979) (Due Process violated where defendant cannot present highly relevant exculpatory evidence because of hearsay restrictions); Taylor v. Illinois, 484 U.S. 400, 416 (1988)(recognizing that the right to present a defense "stand on no lesser footing that the other Sixth Amendment rights," but may be subject to discovery sanctions for egregious conduct); Crane v. Kentucky, 476 U.S. 683, 690 (1986)(finding a Due Process violation where defense prohibited from questioning voluntariness of confession).

Further, the Federal Rules of Evidence provide little restriction for defense evidence.  The Third Circuit has recognized that Fed. R. Evid. 404(b) poses a low threshold for the admissibility of evidence suggesting similarity to other crimes by an unknown party.  See United States v. Stevens, 935 F.2d 1380, 1384, 1401-1407 (3d Cir. 1991) (recognizing that "third party" evidence need not be so similar as to be a "signature crime," as long as the evidence cleared the "relatively low hurdle" presented by the Federal Rules of Evidence).  The Eleventh Circuit has suggested that proper respect for Due Process and the flexibility of the Federal Rules of Evidence do not require that evidence of third party guilt be "substantial."  See Cikora v. Gugger, 840 F.2d 893, 898 (11th Cir. 1988) (requiring introduction of evidence "where there is some showing of a nexus between the other party and the particular crime with which a defendant is charged"); see also Freeland v. United States, 631 A.2d 1186, 1189 (D.C.App. 1993).

The Court of Appeals for the District of Columbia Circuit has recognized that restricting exculpatory evidence on relevancy grounds is an abuse of discretion where the evidence suggests that a third party may be responsible.  See United States v. Morgan, 581 F.2d 933, 937 (reversing where trial court prohibited evidence suggesting that another party had distributed drugs in the past from the home where defendant was arrested).  The Morgan court was satisfied that the Federal Rules required admissibility of exculpatory evidence where the jury "*might not* have drawn (inferences of defendant's guilt) if the evidence suggested that a third person" was responsible.  Id.

In the instant case, Melvin George wishes to present evidence that several other banks had been robbed in the Northwest section of the District of Columbia and within a short period of time from the CitiBank robbery.  Further, Mr. George wishes to introduce evidence that the government has suspected another person in connection with some of these robberies.  Mr. George's right to

present evidence of these other bank robberies and of any suspects falls well within the protections

of the Sixth and Fourteenth Amendments.


Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Tony W. Miles
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202)  208-7500

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. : 06-43(RMU) |
| | : | |
| v. | : | |
| | : | |
| MELVIN GEORGE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE CONCERNING
DEFENDANT'S PRIOR INCARCERATION AND RESPONSE TO DEFENDANT
MELVIN GEORGE'S MOTION IN LIMINE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to grant the Government's Motion to Introduce Evidence Concerning Defendant's Prior Incarceration in the above-referenced case. Furthermore, the government submits its responses to the defendant's motions to prohibit evidence of the defendant's prior incarceration and assaults against his sister and niece, and his motion to introduce evidence regarding other bank robberies. In support of its motion, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on this motion.

## A. BACKGROUND

The defendant has been charged by indictment with robbing a Citibank on December 8, 2005, at approximately 12:58 p.m. Prior to this incident, the defendant was imprisoned almost two years after being convicted of transporting interstate stolen property. He was released from the Federal Transfer Center in Oklahoma City, OK on December 6, 2005 at 9:15 a.m. Upon his release, defendant was given $26.00 to pay for meals, $25.00 for a taxi to the Geyhound bus station, and

$25.00 to pay a tip to the taxi driver. The defendant's Greyhound bus was scheduled to leave Oklahoma City on December 6, 2005 at 10:15 a.m, and arrive in Washington, DC at approximately 7:25 p.m., on December 7, 2005. With limited funds, the defendant arrived at the residence of his sister in Washington, DC on December 7, 2006. On December 8, 2005, the day of the Citibank robbery, a witness saw the defendant counting a substantial amount of cash.

## B. EVIDENCE OF THE DEFENDANT'S PRIOR INCARCERATION IS ADMISSIBLE TO PROVE OPPORTUNITY AND MOTIVE

The government contends that defendant George had a motive for robbing the Citibank because he had been released from prison only two days before the robbery, and presumably he had relatively little money. Thus, the evidence of the defendant's incarceration and release is not offered to prove his character, but to establish his opportunity and motive for committing the instant offense.

It is well settled that Federal Rule of Evidence Rule 404(b) is a rule of inclusion rather than a rule of exclusion. See Huddleston v. U.S., 485 U.S. 681, 689 (1988); U.S. v. Bowie, 232 F.3d 923, 929-30 (D.C. Cir. 2002), citing U.S. v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998). Under Rule 404(b), evidence of other crimes, wrongs, or acts is admissible if that evidence "bears upon a relevant issue in the case such as motive, opportunity, or knowledge." Huddleston, at 685 (holding that the protection against unfair prejudice contained in Rule 404(b) is met if the evidence proffered is offered for a proper purpose, is relevant, is probative of a material issue other than character, and, if requested, the jury is properly admonished regarding the purpose for admitting the evidence). Further, it has been held that Rule 404(b) permits the introduction of evidence of another crime, wrong, or act *unless* the sole purpose for the offer is to establish the defendant's propensity for crime. See U.S. v. Yusufu, 63 F3d 505, 511 (7th Cir. 1995) (*citing* Handbook of Federal Evidence section 404.5 at 213 (West, 1991)). As such, evidence relating to the defendant's recent release from prison and the limited funds he received is admissible under Rule 404(b) as  proof of the defendant's

opportunity and motive to commit the Citibank robbery. See U.S. v. Kimball, 73 F.3d 269 (10th Cir. 1995).

In Kimball, testimony concerning Kimball's prior incarceration was introduced to help prove that he committed a bank robbery. Some of the evidence – such as Kimball's inmate number – was admitted as *res gestae*, that is, as evidence necessary to prove the charged offense. However, other pieces of evidence, such as the "defendant's available cash, and his prospective means of support" were admitted even though that was "not information [   ] linked to the robbery itself." Kimball, 73 F.3d at 272. That evidence was admitted under Rule 404(b) because Kimball's "available cash and prospective means of support was relevant to motive. It is doubtful a proper foundation could have been laid for the evidence presented by Department of Corrections employees without showing defendant's prior incarceration and release shortly before the crime."[5] Id. The Kimball court further concluded that the probative value of the prison-related evidence outweighed any unfair prejudice to the defendant, as required by Rule 403.

The government recognizes that it may be improper to introduce evidence that simply demonstrates that a defendant is "poor," in an attempt to establish a motive for committing a crime such as bank robbery. See Davis v. U.S., 409 F.2d 453, 457 (D.C. Cir. 1969). However, "[w]here an accused is penniless or in financial difficulties and turns up after a crime with a hefty bankroll, a trial judge may, in his discretion, permit a prosecutor to inquire into the defendant's pecuniary situation." Davis, 409 F.2d at 457. And that is the situation the government seeks to prove in this case: the defendant arrived in the District on December 7th, with relatively little money, and the next day (the same day as the bank robbery), was seen counting a substantial sum of money. In short, the

---

[5]In this case, absent a stipulation from the defense, the government would seek to call witnesses from the U.S. Bureau of Prisons to testify about the bus ticket and funds the defendant received upon his release from prison.

defendant's "pecuniary situation," in light of his recent release from prison, is relevant information in establishing his motive for robbery.

Other courts have recognized that evidence concerning a defendant's financial situation may be more relevant and probative than prejudicial, but that issue had to be determined based on the facts of the particular case. See U.S. v. Mitchell, 172 F.3d 1104, 1108 (9th Cir. 1999)(evidence of defendant's poverty should not have been admitted to prove motive in this case, but court noted: "To determine whether evidence of impecuniousness has relevance, and that its probative value is not outweighed by the risk of unfair prejudice, it is necessary to consider the facts of the particular case.").

In Mitchell, the court observed that although "[p]overty as proof of motive has in many cases little tendency to make theft more probable," Id. at 1108, "[a]n unexplained abrupt change of circumstances is not merely proof of motive, but also amounts to circumstantial evidence of the crime." Id. at 1109. In other words, evidence that shows that "the man who was broke yesterday has a couple of hundred quarters today tends to show that the man actually did burglarize someplace that kept its money in quarters, not merely that he had a financial interest in doing so." Id. Applying the Mitchell court's hypothetical example to this case means: the fact that Melvin George arrived in the District one day, with little money and after an extended stay in prison, but is seen the next day counting a substantial sum of cash, tends to prove that he did in fact rob the Citibank. His recent release from prison gave him the opportunity and motive to commit the bank robbery, and evidence that he was seen counting a lot of money – an apparent "abrupt change of circumstances" – helps prove that he carried out the crime.

Evidence of a defendant's incarceration was admitted in U.S. v. Yusufu, 63 F.3d 505, 511 (7th Cir. 1995)(), because it was relevant to establishing when the defendant had the opportunity to

commit the crime with which he was charged.  The court properly admitted evidence that the defendant had been incarcerated in several prisons during certain time periods to show that he received a money market fund application while in prison, and to show that a delay in submitting the application likely resulted from his incarceration  Even though evidence that the defendant had been incarcerated in several prisons was evidence of "other crimes," the "fact of defendant's incarceration told the jury nothing from which the jury could infer that he was of the character to commit the crime of interstate transportation of altered securities.  The evidence did not concern the acts themselves, only Yusufu's domicile during specific periods of time." <u>Id</u>. at 511.

As in <u>Yusufu</u>, the government in this case does not intend to introduce evidence regarding the nature of the crime that led to the defendant's incarceration.[6]  However, the fact of his incarceration and the date of his release from prison is relevant information in establishing his opportunity to commit the crime since it allowed him time to arrive in the District before the Citibank robbery.  Moreover, the date of his release from prison tends to show that he had a very short period of time to acquire the money he was observed counting – thus making a quick acquisition of money through the bank robbery more likely.

In short, introduction of evidence concerning defendant George's incarceration and release satisfies the requirements of Rule 404(b) that the evidence be introduced for a proper purpose, relevant, and more probative than prejudicial.

## C.  <u>EVIDENCE OF DEFENDANT'S ASSAULTIVE BEHAVIOR</u>

The defendant allegedly assaulted his sister, Janene George, and his niece, during the time between the Citibank robbery and his arrest, on December 30, 2005.  The government does not

---

[6]If, however, the defendant testifies, the government would seek to impeach him under Rule 609 by establishing that he had been convicted of Interstate Transportation of Stolen Property.

intend to elicit testimony concerning the assaults during its case-in-chief.  However, if defense counsel makes the assaultive behavior relevant through cross-examination of the witnesses, or during the defense presentation, if any, the government would seek to reassess this position at the relevant point during the trial.

## D.  EVIDENCE OF OTHER BANK ROBBERIES

The government has informed the defense that several robberies were being committed before and after the Citibank robbery on December 8, 2005.  The government has informed the defense that defendant George was not suspected of committing those robberies.  However, certain paperwork prepared by the FBI gave the mistaken impression that a third party, i.e., someone other than defendant George, may have been suspected of having committed the Citibank robbery, even though the defendant had already been arrested for that bank robbery.  Should the defense choose to present evidence regarding this third party, the government will respond through evidence presented at the trial.  In other words, at this time, the government does not seek to limit the defendant's presentation of evidence at trial regarding the alleged third party.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar Number 451058


By:    _____
       Frederick Yette, DC Bar # 385391
       United States Attorney's Office
       Federal/Major Crimes Section
       555 4th Street, N.W.
       Washington, D.C.  20530
       (202) 353-1666
       Frederick.Yette@usdoj.gov

**TRIAL EXHIBITS**

The government will submit an exhibit list and copies of trial exhibits, to the extent possible, under separate cover, prior to the motions hearing on August 3, 2005.

The defense has prepared an exhibit list, but it is not formatted to fit this document.  It will be sent separately as a PDF document.